UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LATANYA BROWN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 24-cv-4371 ) ) Judge April M. Perry |
| BIOLIFE PLASMA LLC, | ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Plaintiff Latanya Brown ("Plaintiff") brings this employment discrimination case against Defendant BioLife Plasma LLC ("Defendant") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), the Americans with Disabilities Act ("ADA"), and the Illinois Human Rights Act ("IHRA"). Specifically, Plaintiff alleges discrimination based on race in violation of Title VII (Count I), retaliation in violation of Title VII (Count II), retaliation in violation of Section 1981 (Count III), disability discrimination in violation of the ADA (Count IV), retaliation in violation of the ADA (Count V), and four counts of discrimination and retaliation in violation of the IHRA (Counts VI, VII, VIII and IX). Doc. 1 at ¶¶ 50-95. Defendant now moves to dismiss Plaintiff's complaint in its entirety under Rule 12(b)(6). Doc. 10. For the following reasons, Defendant's motion is granted in part and denied in part.

**BACKGROUND**

As is appropriate in deciding a motion to dismiss, the Court accepts the facts in Plaintiff's complaint as true and views them in the light most favorable to her. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

According to the complaint, Plaintiff is Black and suffers from lupus and severe depression. Doc. 1 at ¶¶ 1, 5, 6. Plaintiff was hired by Defendant in August 2020. *Id.* at ¶ 15. Plaintiff initially worked as a licensed practical nurse ("LPN") at one of Defendant's plasma therapy clinics in Mobile, Alabama. *Id.* In March 2022, after a competitive internal selection process, Plaintiff was chosen to join Defendant's national launch team to oversee training and development of nursing staff at newly opened facilities. *Id.* at ¶ 17. The launch team consisted of six to eight nurses, and Plaintiff alleges she was the sole African American member of the team from 2022 to 2023. *Id.* at ¶¶ 18, 19.

Plaintiff's first assignment with the launch team was in Fort Worth, Texas from March to April 2022.[1] *Id.* at ¶ 20. As was typical for new launch team personnel, Plaintiff was assigned to be mentored by another nurse, Stephanie Lozano ("Lozano"). *Id.* Plaintiff claims that Lozano relegated administrative and clerical duties to Plaintiff, and that Plaintiff was not learning best practices and mechanics for her new role. *Id.* at ¶ 21. Plaintiff also claims that Lozano limited Alexis Wagstaff ("Wagstaff"), a Black nurse, to recordkeeping duties rather than patient care and clinical responsibilities. *Id.* at ¶ 22. Lozano also allegedly referred to Wagstaff as "Miss Thang," and Plaintiff counseled Lozano on the racial animus of the comment. *Id.* at ¶¶ 23, 25. After Lozano brushed her off, Plaintiff complained to the national director of the launch team, Leslie Nussle ("Nussle"), about Lozano's conduct. *Id.* A few weeks after her complaint, Nussle allegedly began to question Plaintiff's performance, claiming that Plaintiff's managers believed she was not working full days and often seemed disengaged. *Id.* at ¶ 26.

In May 2022, Plaintiff was assigned to a new facility in Del City, Oklahoma. *Id.* at ¶ 27. Plaintiff claims she immediately noticed increased scrutiny from Nussle, who instituted regular

---

[1] Although Plaintiff has conceded that claims from this period are time-barred, evidence from this period can be used to provide background in support of a timely claim. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

check-in calls about Plaintiff's expenses and handling of routine tasks. *Id*. at ¶ 28. During such a call, Plaintiff claims she confided to Nussle that she was struggling with anxiety and had begun taking an antidepressant, and Nussle responded, "Good, maybe you won't cry anymore during our calls." *Id*. at ¶ 31. Check-in calls were allegedly not the norm for other members of the launch team. *Id.* at ¶ 29.

In June 2022, Plaintiff alleges that she learned that her salary was approximately $20,000 less than non-African American members of the launch team. *Id.* at ¶ 30. Plaintiff further alleges that her salary was instead comparable to rank-and-file LPNs at various sites. *Id.*

On July 21, 2022, while on assignment in Flint, Michigan, Nussle allegedly told Plaintiff that Plaintiff needed to "learn how to talk" and might benefit from "a class on speaking properly." *Id*. at ¶ 32. Later that same day, Plaintiff lodged an internal complaint with Defendant's Ethics and Compliance team claiming that Plaintiff had been subjected to disparate treatment and unequal pay based on her race and faced ongoing retaliation after reporting Lozano's conduct. *Id*. at ¶ 33. The next day, Plaintiff was demoted from the launch team and was directed to return to her home base in Alabama. *Id.* at ¶ 35.

After her return to Alabama, Plaintiff suffered a mental health crisis and experienced lupus flare-ups. *Id.* at ¶¶ 37-38. She took extended medical leave and went on short-term disability from July to early December 2022. *Id.* at ¶ 39. When Plaintiff returned to work, Plaintiff's demotion was rescinded, and she returned to the launch team. *Id.* at ¶ 40. However, Plaintiff alleges that the scope of her role on the launch team was sharply reduced. *Id.* at ¶ 41. Instead of taking an active hand in personnel training, Plaintiff's new duties were allegedly largely administrative and to provide support to other trainers – with the exception of an overwhelmingly Black-staffed office in Detroit where Plaintiff was given more responsibility. *Id.*

Plaintiff took medical leave again from April to July 2023 due to deterioration of her mental health. *Id.* at ¶ 45. When Plaintiff returned and was assigned to a launch in Lafayette, Louisiana, her role was allegedly again just to perform support for another trainer. *Id.* at ¶ 46. Plaintiff opted not to renew her contract with the launch team in September 2023 and returned to the Mobile, Alabama office. *Id.* at ¶ 47.

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on March 16, 2023. *Id.* at ¶ 11. Plaintiff subsequently received a right-to-sue letter on February 28, 2024. *Id.* at ¶ 12. Plaintiff filed this action on May 28, 2024.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a case may be dismissed when a plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion is a challenge to the sufficiency of a complaint, not its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering such a motion, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face" and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff does not need to plead particularized facts, but the allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Threadbare recitals of the elements of a cause of

action and allegations that are merely legal conclusions are not sufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

## ANALYSIS

Defendant challenges the complaint on four grounds, arguing that: (1) Plaintiff's IHRA claims must be dismissed for failure to exhaust administrative remedies and because the IHRA does not apply to out-of-state conduct; (2) Plaintiff's claims regarding conduct arising before September 2022 are time barred; (3) Plaintiff fails to plead an adverse employment action for all claims; and (4) Plaintiff fails to plead a statutorily protected activity for her ADA retaliation claim. Each of these arguments will be addressed in turn.

I. **IHRA Claims**

With respect to Defendant's complaints about Plaintiff's IHRA claims, Plaintiff agrees that she cannot state valid claims under the IHRA. Therefore, Counts VI, VII, VIII, and IX are dismissed with prejudice.

II. **Time Bar**

With respect to the time-bar issue, Plaintiff agrees with the basic premise that she cannot file claims under Title VII or the ADA that were not first presented to the EEOC in a charge of discrimination and that any such charge must be filed with the EEOC within 180 days of the wrongful conduct. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). Plaintiff therefore acknowledges that her Title VII and ADA claims cannot be predicated on her July 2022 demotion. However, Plaintiff argues that even without the demotion, she still states valid claims of an adverse employment action in Counts I through V. Specifically, for Count I, Plaintiff claims disparate pay to be an ongoing adverse employment action because pay discrimination resets with each paycheck, and for Counts II, IV, and V, Plaintiff claims that

Defendant changed and diminished her job duties when she returned from leave in December 2022. Whether this suffices to state a valid claim will be discussed below in Section III, but the Court agrees that Counts I, II, IV, and V are not time barred so long as they do not rely upon Plaintiff's demotion.

Unlike with Title VII, there is no need for a plaintiff to exhaust administrative remedies within 180 days of the wrongful conduct for claims brought under Section 1981. *See Fane v. Locke Reynolds LLP*, 480 F.3d 534, 539 (7th Cir. 2007). Therefore, Plaintiff can maintain the demotion theory as a part of her Section 1981 retaliation claim in Count III. While Defendant asserts that Count III should also be dismissed as time barred, Defendant cites no legal authority to support this proposition, nor does Defendant address the relevant differences between timely Title VII claims and those brought pursuant to Section 1981. The Court therefore finds that Plaintiff's demotion can be considered when deciding whether Plaintiff has stated a valid claim in Count III.

### III. Adverse Employment Action

#### A. Count I

As is discussed above, Plaintiff relies on the pay disparity between herself and her non-Black peers on the launch team to support her Count I race discrimination claim. Title VII makes it unlawful for an employer "to discriminate against any individual" with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To survive a 12(b)(6) motion to dismiss, Plaintiff need not provide evidence to support each element of the *prima facie* case of employment discrimination but must set out factual allegations sufficient to show: (1) she is a member of a protected class, (2) she was subjected to an adverse employment act, and (3)

there is a link between those two. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022). A complaint alleging Title VII discrimination "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff" on the basis of a protected characteristic. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013).

There is no dispute that Plaintiff is a member of a protected class. The parties disagree whether Plaintiff has adequately alleged an adverse employment action. Here, Plaintiff alleged that she received $20,000 less than non-Black members of the launch team. Doc. 1 at ¶ 30. The Court has no trouble finding that this constitutes an adverse action with respect to a term of employment. *See, e.g., Hildebrandt v. Ill. Dept. of Natural Resources,* 347 F.3d 1014, 1030 (7th Cir. 2003) (finding that a raise could constitute an adverse employment action if it is less than that received by co-workers not in a protected class); *Moody v. Crete-Monee Sch. Dist. 201-U*, No. 15-CV-5217, 2015 WL 8989503, at *4 (N.D. Ill. Dec. 16, 2015). Defendant's argument that Plaintiff does not plead enough facts to support her claim is the incorrect standard to apply to a motion to dismiss. A complaint in federal court is expected to plead claims, not facts, and though the claim must be plausible, a plaintiff does not have to provide specific details about how the claim will be proved. *Vincent v. City Colleges of Chicago*, 485 F.3d 919, 923 (7th Cir. 2007). The Court finds that Plaintiff has adequately pled a claim of racial discrimination based upon disparate pay in Count I.

### B. Count II & Count III

The Court next addresses whether Plaintiff has adequately pled an adverse employment action for her retaliation claims under Title VII (Count II) and Section 1981 (Count III). The antiretaliation provision of Title VII prohibits an employer from discriminating against an employee because that employee has "opposed any practice made an unlawful employment

7

practice" by Title VII. 42 U.S.C. § 2000e-3(a). Section 1981 guarantees "the right to be free of racial discrimination in the making and enforcing of contracts," including employment contracts. *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013). Moreover, Section 1981 also prohibits retaliation. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008). Pleading a retaliation claim under either statute requires the plaintiff to allege that she "engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013). The protected activity must be specifically identified, and the adverse employment action "must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Roney v. Illinois Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007). The Seventh Circuit has outlined three categories of adverse employment actions: "(1) cases in which the employee's compensation, benefits or other financial terms of employment are diminished, including cases where employment is terminated; (2) cases in which a nominally lateral transfer without a change in financial terms significantly reduces the employee's career prospects by preventing [her] from using the skills in which [she] is trained and experienced; and (3) cases in which the employee is not moved to a different job or the skill requirements of [her] present job altered, but the *conditions* in which [she] works are changed in a way that subjects [her] to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in [her] workplace environment—an alteration that can fairly be characterized as objectively creating a hardship, the classic case being that of the employee whose desk is moved into a closet." *Tart v. Illinois Power Co.*, 366 F.3d 461, 475 (7th Cir. 2004).

In this case, there is no dispute that Plaintiff engaged in a protected activity by complaining of discrimination. The parties instead dispute the presence of an adverse employment action for both Count II and Count III.

The Court begins with Plaintiff's Title VII retaliation claim in Count II. As already discussed, Plaintiff cannot pursue a theory of demotion for Count II. Plaintiff's remaining assertion is that an adverse employment action occurred when her job responsibilities were reduced upon her return to the launch team in December 2022. Doc. 1 at ¶ 57. Specifically, Plaintiff points to the fact that her core role on the launch team was originally "taking an active role in personnel training," and was later "largely confined to an administrative function… and to providing what was tantamount to subordinate support for her peer trainers." Doc. 1 at ¶ 41. The Court believes that these allegations could prove to be within the bounds of a materially adverse action. Drawing reasonable inferences in Plaintiff's favor, the evidence could show that not allowing Plaintiff to train nurses prevented her from using the skills in which she was trained and experienced, and that only allowing Plaintiff to perform administrative functions for her peers created a humiliating work environment. Defendant argues that Plaintiff has not alleged enough facts to support such a theory, but the cases cited by Defendant in support did not involve motions to dismiss. *See Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 384 (7th Cir. 2020) (summary judgment); *Tart v. Illinois Power Co.*, 366 F.3d 461, 475 (7th Cir. 2004) (directed verdict); *Phillips v. Baxter*, No. 23-CV-1740, 2024 WL 1795859, at *3 (7th Cir. Apr. 25, 2024) (summary judgment). At this stage of proceedings, Plaintiff has adequately pled a retaliation claim in Count II.

The Court next addresses Plaintiff's Section 1981 retaliation claim in Count III. Plaintiff contends that two events qualify as adverse employment actions: (1) her demotion on July 22,

2022 to a role with less pay and (2) the eventual reduction of her job responsibilities when she returned to the launch team in December 2022. Doc. 1 at ¶ 63. The Court has already discussed the reduction of Plaintiff's job responsibilities as sufficient to support a retaliation claim. Moreover, given that Plaintiff can also rely on her demotion to support Count III, the Court finds that Plaintiff has easily met the standard for pleading a viable claim of Section 1981 retaliation. *See Lapka v. Chertoff*, 517 F.3d 974, 986 (7th Cir. 2008) (materially adverse actions include "a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.").

### C. Count IV

The Court next addresses whether Plaintiff sufficiently pleads an adverse employment action for her ADA discrimination claim (Count IV). Under the ADA, an employer may not "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish an ADA discrimination claim, a plaintiff must show that she "(1) was disabled within the meaning of the ADA; (2) was qualified to perform the essential functions of the relevant job either with or without reasonable accommodation; and (3) suffered an adverse employment decision because of [her] disability." *Sandefur v. Dart*, 979 F.3d 1145, 1151 (7th Cir. 2020).

There is no dispute that Plaintiff was disabled and could perform the essential functions of the job. Again, the parties dispute whether the diminishment of Plaintiff's job duties after her return from leave in December 2022 qualified as an adverse employment action. Because the standards for proving discrimination claims in ADA actions are similar to those in Title VII actions, the Court finds that Count IV is adequately pled consistent with the discussion above for the purposes of a motion to dismiss.

### D. Count V

The Court turns to Plaintiff's ADA retaliation claim to determine whether she pled the existence of an adverse employment action and engaged in a statutorily protected activity. The anti-retaliation provision of the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To state a claim for ADA retaliation, a plaintiff must plead that she engaged in a protected activity and suffered an adverse employment action because of it. *See Rodrigo v. Carle Foundation Hosp.*, 879 F.3d 236, 243 (7th Cir. 2018).

The Court begins by considering whether Plaintiff alleged an event that qualifies as an adverse employment action. In support of her ADA retaliation claim, Plaintiff asserts that Defendant limited the scope of her responsibilities upon her return from medical leave. Doc. 1 at ¶¶ 41, 46, 73. The "anti-retaliation provision of the ADA ... uses similar language to that in Title VII ... thus, courts look to Title VII retaliation cases for guidance in deciding retaliation cases under the ADA." *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009). Because this Court found that a reduction of job responsibilities could qualify as an adverse employment action in her Title VII retaliation claim, the Court finds that Plaintiff adequately pled an adverse employment action as to Count V.

The Court next considers whether Plaintiff engaged in a statutorily protected activity. Protected activities under the ADA include "either seeking an accommodation or raising a claim of discrimination due to … disability." *Trahanas v. Northwestern Univ.*, 64 F.4th 842, 856 n.6 (7th Cir. 2023). Plaintiff claims that she "engaged in protected activity under ADA by taking an

11

extended combination of medical leave and short-term disability based on her severe depression and suicidal ideations, as well as for debilitating flare-ups of her condition of lupus." Doc. 1 at ¶ 72. The Seventh Circuit has twice assumed that taking medical leave qualifies as protected activity under the ADA. *See Trahanas*, 64 F.4th at 856 ("For this appeal, we assume without deciding that taking FMLA leave constitutes a statutorily protected activity under the ADA"); *Freelain v. Village of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018). The cases cited by Defendant to the contrary all address a different issue: whether an employer is required to grant leave as a reasonable accommodation. This distinction is significant – while it is true that an employer may not have to give leave as a reasonable accommodation, an employer who gives leave should not be allowed to retaliate against an employee who chooses to use it. Defendant does not cite, and the Court has not found, any case that holds that the action of taking leave is not a protected activity under the ADA. The Court declines to so hold now, especially given the undeveloped factual record and the standards appropriate for a motion to dismiss. Plaintiff has adequately pled a statutorily protected activity at this stage.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted, insofar as Counts VI, VII, VIII, and IX are dismissed. The remainder of Defendant's motion is denied. Defendant's Answer to the complaint is due by April 7, 2024.

Dated: March 16, 2025

_____
APRIL M. PERRY
United States District Judge